**HESTON & HESTON**
ATTORNEYS AT LAW
RICHARD G. HESTON (SBN 90738)
19700 Fairchild Road, Suite 280
Irvine, California 92612
Tel: 949-222-1041
Fax: 949-222-1043
rheston@hestonlaw.com

Attorney for Creditor,
Hollie A. Lemkin

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.: 8:24-bk-10187-SC |
| **SUSAN JO WHITE,** | Chapter 7 |
| Debtor. | **NOTICE OF MOTION AND MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO SECTION 707(b)(2) & (3)** |
| | **Hearing:**<br>Date: July 16, 2024<br>Time: 10:00<br>Courtroom: 5C<br>Location: 411 West Fourth Street<br>            Santa Ana, CA 92701 |

TO THE DEBTOR, HER ATTORNEY OF RECORD, THE UNITED STATES TRUSTEE, THE CHAPTER 7 TRUSTEE, AND OTHER INTERESTED PARTIES:

NOTICE IS HEREBY GIVEN that a hearing on Creditor HOLLIE A. LEMKIN'S Motion to Dismiss Pursuant to Section 707(b) has been set for 10:00 AM on July 16, 2024 in Courtroom 5C of the Ronald Reagan Federal Building and Courthouse located at 411 West Fourth Street, Santa Ana, California 92701, on the grounds set forth in the attached Motion.

///

///

///

///

1   If you wish to oppose the motion, you must file your formal written response with the

2 Court and serve a copy to the attorney for the Creditor not less than 14 days prior to the date of

3 the hearing in accordance with local Bankruptcy Rule 9013-1(1)(g). Papers not timely filed and

4 served may be deemed consent to the granting of the Motion.

5

6                HESTON & HESTON,
                Attorneys at Law

7

8 Date: June 12, 2024

               RICHARD HESTON,
9                Attorney for Creditor

# 1.

# STATEMENT OF FACTS

Not uncommonly, the Debtor's decision to seek bankruptcy relief came in the wake of a drawn-out and contentious divorce. After the Debtor did not obtain the outcome she was hoping for in the divorce, she retaliated against Creditor by filing a legal malpractice action against her. When the dust settled in the divorce and related legal malpractice litigation, Debtor had incurred not only the judgment entered against her on February 16, 2021, in favor of Creditor in the amount of $162,202.48 for reasonable attorney fees and costs earned in her divorce, but also for $306,347.04 for unpaid fees and costs owing to Creditor incurred in the resulting malpractice proceeding, a combined total of $468,549.52.

On April 8, 2021, 51 days subsequent to the entry of the judgment in the Legal Malpractice action, Debtor commenced a Chapter 7 bankruptcy proceeding in the Southern District of California ("2001 Bankruptcy"). Debtor maintained that venue for the filing in the Southern District was based upon the "interests of justice", as Debtor did not reside in nor had she resided in the Southern District for any of the prior 180 days, nor did she maintain her principal assets in that district.

On July 7, 2021, Creditor filed Motion for Order Dismissing or Transferring Case to Central District in the Southern District Bankruptcy Court. On August 23, 2021, the Hon. Laura S. Taylor, entered an Order granting the Amended Motion for Order Dismissing or Transferring Case to Central District, and the case was transferred to the Central District.

Debtor claimed to be exempt from the Means Test on the basis that the debts incurred relating to her divorce were non-consumer debts, which made up a majority of her total debt overall. Creditor filed a motion seeking dismissal of the case pursuant to Bankruptcy Code §707(b). This motion was based on refuting Debtor's claim that her debts were primarily non-consumer debts and that if she maintained a reasonable budget she would have sufficient disposable income to pay creditors. The Court granted the §707(b) Motion and held, "After having reviewed the Motion, Opposition, Reply and request for judicial notice, the court adopts the analysis set forth in the Motion and Reply and incorporates the same herein."

1     Less than two months after Debtor's 2021 Bankruptcy was dismissed, she filed another Chapter 7 Petition ("2022 Bankruptcy") despite the fact that there had been no changes to her financial circumstances since the prior case was dismissed pursuant to Section 707(b). This time, the US Trustee was also seeking dismissal under Section 707(b) on the basis that Debtor did not disclose all sources of income, and that if she did, her case would be presumptively abusive, and Debtor could not rebut the presumption. Ultimately, Debtor conceded the merit of the US Trustee's argument and stipulated to dismissal under Section 707(b) with a 180-day bar against re-filing.

    Following the dismissal of the 2022 Bankruptcy, Creditor sought to garnish Debtor's wages. Debtor opposed the garnishment through a claim of exemption, in which she again claimed to have no disposable income from which to pay her debt. Just like the previous bankruptcy, there had been no changes to her financial situation following the Bankruptcy Court's determination that she has disposable income from which she could pay her debts. Not only was her claim of exemption denied, but she and her attorney (who failed to appear at the hearing. As a result of the delay caused by this frivolous claim of exemption, Creditor was only able to garnish a few paychecks.

    On January 25, 2024, Debtor filed her third bankruptcy. In this case, Debtor is claiming that she is a "below median debtor" due to her not having employment during the 6-month lookback period, and therefore that Creditor lacks standing to seek dismissal under §707(b). At the Rule 2004 Exam held on May 12, 2024, Debtor testified that although she included her boyfriend's contributions in the Means Test, she could not say how the amount was calculated or how she determined what contributions were "income" and which ones were "loans". Debtor seems to be making a preemptive argument that "loans" from her boyfriend do not constitute income for purposes of calculating income. Debtor further claimed that she had to reduce her expenses while she was unemployed, but could not specify which expenses she had to reduce. Presumably this is because her long-term boyfriend's substantial income enabled her to enjoy the same standard of living which had twice resulted in her being ineligible for Chapter 7. If Debtor is able to prove that her income, including contributions from her boyfriend, during the six-

month period prior to filing, Creditor would readily concede that she does not have standing to pursue dismissal under §707(b). However, given that Debtor is claiming that 50% ($2,700) of her rent is not an expense paid on her behalf, it is very unlikely that she is below median. If $2,700 per month were to be added to Debtor's current monthly income, her annualized income would be $129,837.96, which is $24,707.96 over median.

With interest accruing on the judgment at the rate of $128.36 daily from entry of judgment until Debtor filed her petition for Chapter 7 relief on January 25, 2024, Creditor's claim against debtor had reached $606,408.16. In addition to the attorney fees and costs owing to Creditor, Debtor scheduled another $164,654 in attorney fees incurred in pursuing her unsuccessful malpractice suit against Creditor, comprised of the fees of the family law firm of Gilligan, Frisco & Trutanich associated to aid lead Creditor's counsel ($14,654), and her lead legal malpractice attorney John Mulvana, Esq. ($150,000).

Altogether, Debtor's schedules list general unsecured claims totaling $851,6222.62 [see DOC 1 at p 18], including $61,487.35 of tax claims that Debtor is claiming are entitled to priority and $392,208.13 of secured claims. These secured claims include the following: 1) a debt owed to Charles Schwab in the amount of $14,649.12 secured against her 401(k) account which is categorized as a 401(k) loan[1]; 2) a debt owed to Executive Decisions Group, her boyfriend's company, in the amount of $10,000.00 secured against her car; 3) a debt owed to the Franchise Tax Board in the amount of $52,171.00 secured against her IRA account; 4) two debts owed to Hyundai Motor Finance in the amounts of $9,151.00 and $19,137.00 secured against her car and nothing, respectively; 5) five debts owing to the Internal Revenue Service totaling $262,380.01 secured against her 401(k) account; and 6) a debt owing to Robert Stidham in the amount of $24,720.00 secured against her car.

---

[1] Courts have held that a 401(k) loan is not a secured claim. The Means Test explicitly excludes taking a deduction for a 401(k) loan payment. It is improper to get around this exclusion by claiming that the debt is secured, and therefore a deduction is permissible. See In re Egebjerg, 574 F.3d 1045 (9th Cir. 2009).

The amounts and categorization of Debtor's tax debts is different than how they were scheduled in her prior cases. Presumably this was done because treating these non-priority tax debts as secured would help her pass the Means Test.

In Debtor's Schedule J, she lists her net monthly income as $3,119.55, yet she offers no explanation as to why her disposable income should not be used to pay her creditors. Chapter 7 bankruptcy is intended for debtors who genuinely cannot repay their debts, not for those with significant disposable income.

## 2.

## A MOTION TO DISMISS PURSUANT TO SECTION 707(b)(3) BASED ON THE TOTALITY OF CIRCUMSTANCES REQUIRES ONLY A SHOWING OF "ABUSE," NOT THE HIGHER PRE-BAPCPA STANDARD OF "SUBSTANTIAL ABUSE"

Where the totality of the circumstances of the debtor's situation demonstrates "abuse," dismissal is appropriate. This was held to be the case even before the enactment of BAPCPA. In re Price, 353 F.3d 1135, 1138 (9th Cir. 2004). Moreover, this remains true even where the debtor passes the Means Test. "Even if a presumption of abuse does not arise, however, the court may still dismiss a Chapter 7 bankruptcy case for abuse under the alternative tests of § 707(b)(3)." In re Miller, 2:13-bk-35116-RK, at *1 (Bankr. C.D. Cal. Sep. 9, 2015). See also In re Reed, 422 B.R. 214, 229-230 (Dist.C.D.Cal. 2009). "While BAPCPA changed the standard for dismissal in this context from "substantial abuse" to "abuse," in analyzing the new § 707(b), the courts have recognized that it is "best understood as a codification of pre-BAPCPA case law and, as such, pre-BAPCPA case law is still applicable when determining whether to dismiss a case for abuse." (Citations omitted.) Ng v. Farmer (In re Ng), 477 B.R. 118, 126 (B.A.P. 9th Cir. 2012).

The threshold for dismissal of a Chapter 7 case based on abuse has been lowered. Before it was amended by BAPCPA, Section 707(b) allowed dismissal for "substantial abuse" of Chapter 7. See In re Mitchell, 357 B.R. 142, 153 (Bankr. C.D. Cal. 2006) ("Given that BAPCPA has lowered the threshold for dismissal under § 707(b) from "substantial abuse " to "abuse", it appears that the Price test (which was formulated for the more rigorous "substantial abuse"

standard) is still relevant in making determinations of "abuse" under the current version of § 707(b)(3).")

### III.

### IN APPLYING THE "TOTALITY OF THE CIRCUMSTANCES" STANDARD, THE COURT SHOULD CONSIDER, AMONG OTHER FACTORS, WHETHER THE DEBTOR'S BUDGET IS REASONABLE, WHETHER EXPENSES CAN REASONABLY BE REDUCED, WHETHER THE PETITION WAS FILED IN GOOD FAITH, AND, MOST IMPORTANTLY, WHETHER THE DEBTOR HAS THE ABILITY TO REPAY THEIR DEBTS

The dismissal of Chapter 7 cases for abuse based on the "totality of the circumstances" test predated the enactment of BAPCPA. As such, courts have continued to rely on pre-BAPCPA case law in determining whether there exists "abuse" under § 707(b)(3)(B). See In re Maya, 374 B.R. 750, 754 (Bkrtcy. S.D. Cal. 2007) (applying pre-BAPCPA case law to conclude ability to pay can support case dismissal under post-BAPCPA § 707(b)(3)); In re Pak, 343 B.R. 239, 243 (Bkrtcy. N.D. Cal. 2006) (noting it would be "counterintuitive" to construe the phrase "totality of circumstances" used pre-BAPCPA differently post-BAPCPA); In re Camp, 416 B.R. 304, 312 (Bankr. E.D. Tex. 2009) (applying pre-BAPCPA factors in considering "totality of circumstances").

Orders of dismissal under § 707(b) and whether to hold an evidentiary hearing are reviewed under the abuse of discretion standard. See In re Khachikyan, 335 B.R. 121, 125 (9th Cir. B.A.P. 2005). While the determination of whether the facts of a given case amount to "abuse" must be made on a case-by-case basis, and the issue is committed to the Court's sound discretion, the reported cases offer guidance in identifying the various factors to be considered in reaching that determination. See In re Camp at 312 (collecting and reviewing the cases); see also In re Green (4th Cir. 1991) 934 F.2d 568, 572.

Among the various factors that may be considered in weighing whether to grant a Motion to Dismiss brought under 11 U.S.C. § 707(b)(3) under the "totality of the circumstances" test include whether:

a) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;

b) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;

c) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;

d) Whether the debtor's proposed family budget is excessive or extravagant;

e) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and

f) Whether the debtor has engaged in eve-of-bankruptcy purchases.

In re Price, 353 F.3d 1135 (9th Cir. 2004) (citing 3 Norton Bankruptcy Law and Practice 2d § 67:5, at 67-10 (William L. Norton, Jr. et al. eds., 1997)).

The debtor's ability to pay creditors out of future disposable income is the principal consideration of the "totality of the circumstances" test. See In re Kelly at 914-915. Courts are not "chained" to the Means Test analysis of disposable income during the limited 6-month prior to filing, but under the §707(b)(3)(B) "totality of the circumstances" test are free to examine the debtor's actual income as opposed to the income stated on Form B22A. In re Camp at 313-314; In re Pennington, 348 B.R. 647 (Bankr. D. Del. 2006) (the court may consider debtor's financial condition as of date dismissal motion is heard); In re Pak, at 246-247) (a debtor's actual and anticipated future income must be considered under § 707(b)(3)(B) dismissal motion. A debtor who has the ability to repay a meaningful portion of their debts is expected to do so, either by reorganizing their debts through bankruptcy or by seeking non-bankruptcy alternatives.

Here, Debtor has failed to include all household income. She did this because, as was the case with her last two prior bankruptcies, the inclusion of all household income would raise the presumption of abuse and, given that Debtor lists disposable income of $3,119.55, she would not be able to rebut this presumption. She has the ability to repay a substantial portion of her unsecured debts. Given the proximity of the entry of judgment and Debtor filing her bankruptcy,

it does not seem that the filing was a consequence of illness, disability, unemployment, or some other calamity.

## **CONCLUSION**

Chapter 7 bankruptcy is designed to provide a fresh start to those who are truly unable to pay their debts due to insurmountable financial hardship. Allowing the Debtor to discharge her debts under Chapter 7 would undermine the integrity of the bankruptcy system and set a precedent that high-income earners can evade their financial responsibilities while maintaining an extravagant lifestyle – and if doesn't work the first time, keep trying. The Debtor's repeated filings and misrepresentations of her financial status further demonstrate an abuse of the bankruptcy process.

In light of the fact that the Debtor filed this case with a substantial amount of disposable income, she should not be entitled to a Chapter 7 discharge. Debtor neglected to include the full amount of her rent with the specific purpose of excluding the contribution income which is used to pay the amount of rent that is not listed. This financial capability clearly indicates that she does not qualify for the relief intended for those who are genuinely unable to meet their financial obligations.

Therefore, to preserve the integrity of the bankruptcy system and ensure that it is used appropriately, the Debtor's petition for Chapter 7 relief should be dismissed or converted to a Chapter 13 proceeding. In Chapter 13, the Debtor can develop a repayment plan that reflects her true financial capacity and allows her to meet her obligations to her creditors. This would ensure that the bankruptcy system remains a refuge for those in genuine need and not a tool for the affluent to avoid their legitimate financial responsibilities.

For the reasons stated above, the Court should either dismiss Debtor's case or allow her to convert her case to one under Chapter 13.

Date: June 12, 2024

HESTON & HESTON,
Attorneys at Law

RICHARD HESTON,
Attorney for Creditor

9

# **DECLARATION OF RICHARD G. HESTON**

I, Richard G. Heston, declare as follows:

1. I am the attorney of record for Creditor Hollie A. Lemkin ("Creditor"). I have personal knowledge of all matters stated herein and, if called to testify, I could competently testify thereto.

2. The Debtor's decision to seek bankruptcy relief was made following a prolonged and contentious divorce. After failing to achieve the desired outcome in the divorce proceedings, the Debtor retaliated against the Creditor by initiating a legal malpractice action. Ultimately, the Debtor incurred a judgment against her on February 16, 2021, in favor of the Creditor amounting to $162,202.48 for reasonable attorney fees and costs related to her divorce, and an additional $306,347.04 for unpaid fees and costs from the resulting malpractice proceeding. The combined total debt amounted to $468,549.52.

3. On April 8, 2021, 51 days after the judgment in the legal malpractice action, the Debtor commenced a Chapter 7 bankruptcy proceeding in the Southern District of California. Debtor asserted that the venue was chosen based on the "interests of justice," despite not residing or having resided in the Southern District for the prior 180 days, nor maintaining her principal assets in that district.

4. On July 7, 2021, the Creditor filed a Motion for Order Dismissing or Transferring Case to the Central District in the Southern District Bankruptcy Court. On August 23, 2021, Judge Laura S. Taylor granted the motion, and the case was transferred to the Central District.

5. The Debtor claimed exemption from the Means Test on the grounds that the debts related to her divorce were non-consumer debts, which constituted a majority of her total debt. The Creditor filed a motion seeking dismissal under Bankruptcy Code §707(b), arguing

that the Debtor's debts were primarily consumer debts and that she had sufficient disposable income to pay creditors if she maintained a reasonable budget. The Court granted the motion, adopting the analysis set forth in the motion and reply.

6. Less than two months after the dismissal of her 2021 bankruptcy, the Debtor filed another Chapter 7 petition in 2022. Despite no changes in her financial circumstances since the previous dismissal, the US Trustee sought dismissal under §707(b) on the basis that the Debtor did not disclose all sources of income. The Debtor ultimately conceded to the US Trustee's argument and stipulated to dismissal with a 180-day bar against re-filing.

7. Following the dismissal of the 2022 bankruptcy, the Creditor sought to garnish the Debtor's wages. The Debtor opposed the garnishment through a claim of exemption, again asserting that she had no disposable income to pay her debt. The court denied her claim of exemption, and due to the delay caused by this frivolous claim, the Creditor was only able to garnish a few paychecks.

8. On January 25, 2024, the Debtor filed her third bankruptcy. In this filing, she claimed to be a "below median debtor" due to unemployment during the 6-month lookback period. At the Rule 2004 Exam held on May 12, 2024, the Debtor testified that she included her boyfriend's contributions in the Means Test but could not specify how the amount was calculated or differentiate between "income" and "loans." She also claimed to have reduced her expenses while unemployed but could not identify specific reductions.

9. The Debtor claims that 50% ($2,700) of her rent is not an expense paid on her behalf. At her Rule 2004 Exam, she indicated that she had her lease amended to list her boyfriend's business as a co-tenant. Including this amount in her current monthly income would result in an annualized income of $129,837.96, which exceeds the median income by $24,707.96.

10. As of January 25, 2024, with interest accruing at $128.36 daily, the Creditor's claim against the Debtor reached $606,408.16. Additionally, the Debtor scheduled another $164,654 in attorney fees from her unsuccessful malpractice suit against the Creditor, leading to a total of $851,622.62 in general unsecured claims. This includes $61,487.35 of tax claims asserted as priority and $392,208.13 of secured claims.

11. Despite listing a net monthly income of $3,119.55, the Debtor offers no explanation as to why her disposable income should not be used to pay creditors.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: June 12, 2024

RICHARD HESTON

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**19700 Fairchild Road, Suite 280
Irvine, CA 92612**

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO SECTION 707(B)(2) & (3)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 6/12/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Anerio V Altman    LakeForestBankruptcy@jubileebk.net, lakeforestpacer@gmail.com;ecf@casedriver.com
Karen S Naylor (TR)    alane@ringstadlaw.com, knaylor@IQ7technology.com;ecf.alert+Naylor@titlexi.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 6/12/2024 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Judge Scott C. Clarkson
411 West Fourth Street
Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed (state method for each person or entity served):

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 6/12/2024 | **Benjamin Heston** | /s/Benjamin Heston |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**