HESTON & HESTON, ATTORNEYS AT LAW
RICHARD G. HESTON (SBN 90738)
19700 Fairchild Road, Suite 280
Irvine, California 92612
Tel: 949-222-1041
Fax: 949-222-1043
rheston@hestonlaw.com

Attorney for Creditor,
Hollie A. Lemkin

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re: | Case No: 8:24-bk-10187-SC |
| **SUSAN JO WHITE**, | Chapter 7 |
| Debtor. | **REPLY IN SUPPORT OF MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO SECTION 707(b)(2) & (3)** |
| | **Hearing:**<br>Date: July 16, 2024<br>Time: 10:00<br>Courtroom: 5C<br>Location: 411 West Fourth Street<br>           Santa Ana, CA 92701 |

    Creditor, Hollie Lemkin, hereby replies to the Opposition of Debtor to Creditor's Motion to Dismiss pursuant to 11 U.S.C. §707(b) and alleges as follows:

**I.**

**CREDITOR HAS ALREADY CONCEDED THAT IF THE DEBTOR'S INCOME WERE BELOW MEDIAN, SHE WOULD NOT HAVE STANDING TO SEEK DISMISSAL UNDER SECTION 707(b). CREDITOR CONTENDS THAT THE DEBTOR'S INCOME IS ABOVE MEDIAN BY VIRTUE OF THE FACT THAT SHE HAS YET AGAIN FAILED TO DISCLOSE ALL SOURCES INCOME**

    The Debtor's opposition primarily rests on a point which has already been conceded – that Creditor would lack standing to bring a §707(b) Motion if the Debtor's income was below

1

median income. As stated in Creditor's Reply in Support of Motion to Extend the §707(b) Deadline:

> "Debtor argues that the deadline should not be extended because only the U.S. Trustee has standing to bring a §707(b) motion. Although this is true when a debtor's income is below median, Movant believes that Debtor's income is above median by virtue of her deliberate underreporting of her income and/or not disclosing sources of household income, as was the case in her prior bankruptcies which were dismissed pursuant to §707(b). **If further investigation reveals that Debtor's income is below median, Movant would concede that she does not have standing to seek dismissal under §707(b)."**

See Reply in Support of Motion to Extend the §707(b) Deadline, docket #26, p. 2, lines 16-22.

However, Debtor has failed to produce any evidence to support her claim of having below median income. In Debtor's prior two Chapter 7 cases, both dismissed pursuant to Section 707(b)(2), she also submitted Means Tests which showed that there was not a presumption of abuse, yet in both of those cases, the Court found that she had misrepresented her income in order to achieve this result. She has done the same thing in this case. The fact that Debtor went through the trouble of having her boyfriend's corporation added to the lease and now argues that her rent has been reduced demonstrates that she has omitted $2,700 of contribution income from her Means Test calculation. If $2,700 per month was added back into the Means Test, her income would be above median, and therefore Creditor has standing to bring this motion. If the Court were to find that Debtor has misrepresented her income in order to distort her financial circumstances, that would be the fourth time that a Court has found that she has done this.

In support of Debtor's argument, the Opposition claims that District Court in <u>Schuchardt v. Gandy (In re Gandy)</u>, 645 F. App'x 348 (6th Cir. 2016) supports the position that "[a]rtful pleading by the Creditor is insufficient to circumvent this requirement." However, the Opposition does not cite the District Court's decision and the quoted text comes directly from the trial court's decision in <u>In re Gandy</u>, No. 11-30369 (Bankr. E.D. Tenn. July 12, 2013). It is worth noting that following the trial court's decision to deny the creditor's motion to dismiss on July 12, 2013, the creditor filed an adversary proceeding under §727 for various false oaths. In

response, the debtor withdrew his Means Test claiming that it had been filed "in error" and then submitted a revised Means Test which showed that he was above median income. Similar to Debtor's argument that artful pleading by the Creditor cannot get around this requirement, false statements by the Debtor cannot create the requirement. The Debtor has not cited to any controlling authority for her position to the contrary.

## II.

## THE BURDEN TO PROVE ELIGIBILITY RESTS WITH THE DEBTOR, NOT THE CREDITOR. DEBTOR HAS FAILED TO PROVE THAT HER INCOME STATED ON THE MEANS TEST IS ACCURATE

The Means Test operates by including income down to the penny. At the Debtor's Rule 2004 examination by Creditor's counsel, she stated as follows:

> Q    Okay. So this is the statement of your current monthly income that was submitted with your current case. As you can see here under line for all amounts from any source which are regular paid for household expenses, you or your dependents, including child support it list $6972.33.
> How did you arrive at that number?
>
> A    It's an average.
> It would be an average. So we looked at the six months prior, and it was an average.
>
> Q    So when – these -- is this all contributions? Is part of that child support?
>
> A    It says "including child support." So the child support would have been included in that number.
>
> Q    And so when [your boyfriend] Robert [Stidham] was making these contributions during that period, how would he do that? Would he give you money or would he pay expenses directly?
>
> A    It just – it depend upon what was needed.

> **There's never been -- it's never been a set amount. It's never been said, this is like, oh, hey, I need help with this or groceries or gas or whatever and he may take me to the gas station or take me grocery shopping, or he may even give me some cash if I needed. I mean, it just appended. There's never been a set way. It's all just whatever.**

See Exhibit A, Rule 2004 Exam transcript, 27:25-29:7.

If Debtor's income as stated on the Means Test was accurate, this is something that she could have proven. She could have submitted evidence of deposits, withdrawals, receipts, and other documentary evidence to show which household expenses she paid for and which ones her boyfriend paid for. However, she has not produced any evidence to support the statements made in her Means Test. Given that she has failed to produce this evidence, an inference should be made that such evidence does not exist. Again, Debtor claims that the Court should just assume she is being truthful, when several courts, including this Court, have already found that the Debtor is not a truthful person. The family court found that she was untruthful in her divorce case, this civil court found that she was untruthful in the malpractice action, and this Court has twice found that she was untruthful in her Means Test.

### III.

**THE DEBTOR SHOULD NOT BE REWARDED FOR TRYING TO "GAME" THE MEANS TEST BY ADDING HER BOYFRIEND'S COMPANY TO HER LEASE. HER LIVING SITUATION HAS NOT CHANGED AND THIS WAS DONE SOLELY TO TRY AND EXCLUDE CONTRIBUTION INCOME FROM THE MEANS TEST.**

In Debtor's prior cases and in her claim of exemption, she listed her rent as $5,400 at the same address she currently resides. In her prior bankruptcy cases, the Court has found that her boyfriend's contribution toward this amount should be included as contribution income on the Means Test. In July of last year, Debtor added the corporation of which her boyfriend is CEO to her lease. In her declaration, she claims "His corporation is technically a co-tenant with me." See Declaration of Susan White, docket #36, p. 10, line 8. This lease addendum states: "All other

terms remain the same." See Attachment 1 to Declaration of Susan White. In other words, Debtor is still liable for the full $5,400, her living situation has not changed at all, and her boyfriend's contributions toward rent should be included as contributions. If $2,700 is added back into the Means Test, her income would not be below median and she would not be able to rebut the presumption of abuse.

## IV.

**THE DEBTOR HAS A LONG HISTORY OF BEING GAINFFULLY EMPLOYED, AND HER JOB LOSS SHOULD NOT END THE INQUIRY AS TO WHETHER HER FILING IS ABUSIVE. HER BOYFRIEND, WHO IS WEALTHY AND OWNS A SUCCESSFUL BUSINESS, HAS MADE CONTRIBUTIONS TOWARD THE HOUSEHOLD WHICH HAVE ENABLED DEBTOR TO <u>MAINTAIN</u> THE STANDARD OF LIVING THAT HAS TWICE RESULTED IN HER CASE BEING DISMISSED.**

At Debtor's Rule 2004 Exam, she testified as follows:

**Q    During the time in which you were unemployed, were there any expenses that you had to cut back on or did you maintain essentially the same standard of living?**

**A    Definitely cut back. I mean, we rarely go out to eat, I guess. What expenses?**

**Q    I'm just asking across the board were there any expenses that you can recall having to cut back on during that period?**

**A    Trying to be more thoughtful with, you know, water use and not eating out. I don't live on extravagant life in the first place. I've got teenagers.**

See Exhibit B, Rule 2004 Exam transcript, 30:11-23.

The plight of financial hardship is a very real and visceral experience. A person who is actually experiencing financial hardship caused by loss of income would be able to be answer a question like this with much more specificity. For instance, switching to shopping at WalMart

instead of higher end outlet stores, cancelling streaming services subscriptions, making coffee at home instead of going to Starbucks, not going out on dates, running the A/C less, ending allowance for the kids, and so on. The Schedules I & J which Debtor submitted with her Petition show that she had $3,119.55 of disposable income from which she could have used to pay back a significant portion of her debts - **$187,173 over a 5-year term**. However, Debtor decided long ago that she would rather pay back nothing.

As with the lease addendum, Debtor has shown that her attempts to obtain a Chapter 7 discharge extend beyond the documents she files with the Court and have informed her real world decisions. Debtor has a long history of being gainfully employed at a high income and it could be reasonably assumed that Debtor, if she is still unemployed, has chosen to become and/or remain unemployed in order to strengthen her argument for receiving a Chapter 7 discharge. The Debtor's declaration states that she has not been able to find employment and that she does not have any leads, but she has not claimed that she is even looking for employment. Either way, she has not provided any evidence to support her claim that she is currently in some kind of dire financial circumstances. However, whether or not she is currently employed should not be a controlling factor since, despite her unemployment previously and while the case has been pending, she appears to enjoy the same high standard of living which has twice resulted in her case being dismissed.

## V.

**THE DEBTOR HAS NOT PROVIDED ANY EVIDENCE SUPPORT OF HER ARGUMENT THAT INCLUDING DEBTOR'S BOYFRIEND AS A MEMBER OF THE HOUSEHOLD WOULD SHOW THAT SHE IS STILL BELOW MEDIAN INCOME.**

In Debtor's Opposition, she states: "Thus, even allowing for the Creditor's argument, the Debtor, with a household of four, would still be below median income." The Debtor did not provide any evidentiary support for the statement. Based on the fact that Debtor has chosen *not* to include her boyfriend as a member of the household, there is no question that if Mr. Stidham was included as a member of the household and his income was included in the Means Test, the

Debtor's income would be above median and she would not be able to rebut the presumption of abuse.

## VI.

## CONCLUSION

This is the Debtor's fourth bite at the apple. In her two previous bankruptcy cases, the Court has found that she misstated her income in order to claim that she is eligible for a Chapter 7 discharge. This case is no different.

Even if the Court were to find that the circumstances of this case are substantially different from the prior cases, the Debtor should not be rewarded for being a repeat filer. It would be bad policy to say that a debtor who is found to be ineligible for Chapter 7 should just wait a little while and try again. Here, if Debtor's case is dismissed and she decides to try and refile, she would also be ineligible to file her case under Chapter 13 since her debts would be able the Chapter 13 debt limit under 11 U.S.C. §109(e).

For the reasons stated above and in the Motion, it is respectfully requested that the Debtor's case should be dismissed or that she be allowed to convert her case to Chapter 13, for which she is eligible notwithstanding the sunsetting of the increased debt limits for cases filed after June 30, 2024.

Date: July 9, 2024

HESTON & HESTON,
Attorneys at Law

RICHARD HESTON,
Attorney for Creditor

# EXHIBIT A

```
 1   $6,972.33, which would mean that the actual amount
 2   would be six times that.  So that would be $41,834.
 3           Does that sound like it is correct as the
 4   amount he --
 5           MR. ALTMAN:  Objection.  Go ahead.  Finish.
 6   Sorry.
 7   BY MR. HESTON:
 8       Q   -- as the amount that he contributed during
 9   that period?
10           MR. ALTMAN:  Objection, calls for a legal
11   conclusion.  Objection, assumes facts not in
12   evidence.  Objection, best evidence rule.  Objection,
13   hearsay.
14           Susan, you can answer it if you know.
15           THE WITNESS:  I don't -- I don't know the
16   exact amount.  Again, I don't know because it varies.
17   There's never been a set amount.
18   BY MR. HESTON:
19       Q   Can you see my screen?
20       A   Yes.
21           MR. ALTMAN:  Yes.
22   BY MR. HESTON:
23       Q   Okay.  Do you recognize this document?
24       A   Yes.
25       Q   Okay.  So this is the statement of your
```

```
 1   current monthly income that was submitted with your
 2   current case.  As you can see here under line 4 for
 3   all amounts from any source which are regularly paid
 4   for household expenses of you or your dependents,
 5   including child support it lists $6,972.33.
 6           How did you arrive at that number?
 7       A   It's an average.
 8           MR. ALTMAN:  Objection, calls for a legal
 9   conclusion.
10           THE WITNESS:  Oh.
11           MR. ALTMAN:  Susan, you can answer if you
12   know.
13           THE WITNESS:  It would be an average.  So we
14   looked at the six months prior and it was an average.
15   BY MR. HESTON:
16       Q   So when -- these -- is this all
17   contributions is part of that child support?
18       A   It says "including child support."  So the
19   child support would have been included in that
20   number.
21       Q   And so when Robert was making these
22   contributions during that period, how would he do
23   that?  Would he give you money or would he pay
24   expenses directly?
25       A   It just -- it depend upon what was needed.
```

```
 1  There's never been -- it's never been a set amount.
 2  It's never been said this is like, oh, hey, I need
 3  help with this or groceries or gas or whatever and he
 4  may take me to the gas station or take me grocery
 5  shopping, or he may even give me some cash if I
 6  needed it.  I mean, it just depended.  There's never
 7  been a set way.  It's all just whatever.
 8       Q    And you mentioned that when you weren't
 9  working the money that he would give you or the
10  expenses that he would cover those were
11  contributions, whereas while you were working you
12  treated them as loans.  Is that -- is that correct?
13       A    So not in all cases, but, yeah, my intent
14  has always been to pay back.  I never expected to not
15  be working.  So that was the original intent.
16       Q    Is there any expectation that you repay any
17  of this $6,972 or I guess total would $41,834.
18            Is there any expectation that you have to
19  repay that?
20       A    Well, so you're bundling in what Robert
21  gives me, my child support due, my unemployment.  So
22  you're not -- you got to piece it out.  Because this
23  probably wasn't that complete amount.  So if you're
24  asking me am I intending -- so what are you asking?
25  So knowing that it's not -- you're trying to lump it
```

29

# EXHIBIT B

```
 1   together and it's not lumped together.
 2       Q    Right.
 3       A    So you have to look at it more
 4   individually.
 5       Q    Okay.  We can just ignore the numbers.
 6            If -- are you expecting to repay any of the
 7   contributions that Robert gave to you during the time
 8   in which you were unemployed?
 9       A    We have not sat down and talked about it.
10       Q    I'm just turning off screen share.
11            During the time in which you were
12   unemployed, were there any expenses that you had to
13   cut back on or did you maintain essentially the same
14   standard of living?
15       A    Definitely cut back.  I mean, we rarely go
16   out to eat, I guess.  What expenses?
17       Q    I'm just asking across the board were there
18   any expenses that you can recall having to cut back
19   on during that period?
20       A    Trying to be more thoughtful with, you know,
21   water use and not eating out.  I don't live an
22   extravagant life in the first place.  I've got
23   teenagers.
24       Q    And you said you started working at a new
25   job in December of 2023.
```

30

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**3090 Bristol Street #400
Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **REPLY IN SUPPORT OF MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO SECTION 707(b)(2) & (3)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 7/9/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Anerio V Altman     LakeForestBankruptcy@jubileebk.net, lakeforestpacer@gmail.com;ecf@casedriver.com
Karen S Naylor (TR)    alane@ringstadlaw.com, knaylor@IQ7technology.com;ecf.alert+Naylor@titlexi.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 7/9/2024 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Judge Scott C. Clarkson
411 West Fourth Street
Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed (state method for each person or entity served):

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/9/2024 | **Benjamin Heston** | /s/Benjamin Heston |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                         **F 9013-3.1.PROOF.SERVICE**